2026 IL App (1st) 181070-UB

No. 1-18-1070

Filed March 31, 2026

Third Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 16555 |
| | ) | |
| MATTHEW SMITH, | ) | Honorable |
| | ) | Michele Pitman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Quish concurred in the judgment.

**ORDER**

¶ 1     *Held*: Prosecutor's comments in closing arguments did not amount to reversible error.

¶ 2     Matthew Smith was convicted of first degree murder following a jury trial. The evidence showed that he fatally shot Kevin Guice in the parking lot of the Press Box—a night club in Harvey, Illinois—in August 2012.[1] We previously found that Smith was deprived of his constitutional right to a public trial, which constituted a structural error requiring reversal of the conviction. See *People v. Smith*, 2023 IL App (1st) 181070, ¶¶ 28-29. Since the evidence was sufficient to prove Smith's

---

[1]The trial evidence was set forth in both our prior opinion and the supreme court's decision. It need not be recounted here.

guilt beyond a reasonable doubt, we remanded for a new trial. *Id*. ¶ 29. Although we found one issue dispositive, we addressed Smith's other contentions that we believed were likely to recur on remand. *Id*. ¶ 30.

¶ 3        Our supreme court granted the State's petition for leave to appeal. The court found that Smith's right to a public trial was not violated and reversed our ruling. *People v. Smith*, 2025 IL 130067, ¶ 33. The court proceeded to consider the other issues that we had addressed. *Id*. ¶ 34. Among those issues were comments in the State's closing argument that Smith claimed were improper. *Id*. Ultimately, the court found no reversible error and affirmed Smith's conviction. *Id*. ¶¶ 64-65. However, the court remanded the matter to this court, directing us to consider the remaining comments from the State's closing argument that were not addressed in our prior review. *Id*. ¶ 62, 65. Accordingly, we now consider those three unaddressed comments.

¶ 4        First, Smith claimed that the prosecutor improperly injected his personal opinion by stating, "The difference between me and the defense attorney is that there is no question the defendant killed Kevin Guice." Although Smith's motion for new trial asserted that the prosecutor made prejudicial statements in his closing argument, Smith failed to make a contemporaneous objection to this remark. To preserve an issue for review, a defendant must both make a contemporaneous trial objection and include the issue in a motion for new trial. *People v. Denson*, 2014 IL 116231, ¶ 11. Failure to do both results in forfeiture of the issue on appeal. *People v. Harris*, 2022 IL App (1st) 192509, ¶ 76. But, an unpreserved issue may be reviewed under the plain error doctrine when either (1) the evidence is so closely balanced that the error tipped the scales against the defendant regardless of the seriousness of the error or (2) the error is so serious it affected the fairness of the defendant's trial and challenged the integrity of the judicial system, regardless of the closeness of

the evidence. *People v. Jackson*, 2020 IL 124112, ¶ 81. In plain error analysis, our initial inquiry is to determine whether a clear or obvious error occurred. *Id*.

¶ 5       For a prosecutorial comment in closing argument to be reversible error, the comment must be both improper and substantially prejudicial. *People v. Williams*, 2022 IL 126918, ¶ 49. Prosecutors are afforded wide latitude in closing argument. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). The prosecutor "may comment on the evidence and any reasonable inferences that arise from it, even if those inferences reflect negatively on the defendant." *Williams*, 2022 IL 126918, ¶ 44. Prosecutors may also comment on matters implicated by defense counsel. *Id*. We consider the comments in closing argument in context of the entire closing arguments of both the State and defendant. *People v. Ceja*, 204 Ill. 2d 332, 357 (2003).

¶ 6       We find that this remark does not constitute a clear or obvious error. For context, defense counsel had argued that Guice's murder was "a senseless, stupid act," but the case was a "whodunit." She then proceeded to argue that Smith had been misidentified as the shooter. In rebuttal, the prosecutor stated, "It's not a whodunit if you completely disregard what you were listening to for four days." Later, he added, "I agree with one thing [defense] counsel said. The murder of Kevin Guice *** was senseless. I agree with that." Moments later, he followed with, "[t]he difference between me and the defense attorney is that there is no question the defendant killed Kevin Guice." Thus, the context indicates the remark was responsive to matters raised in defense counsel's argument.

¶ 7       Moreover, we agree with the State that the remark was a comment on the strength of the evidence. Illinois courts have found such statements acceptable. See *People v Williams*, 26 Ill. 2d 190, 193 (1962) ("It is, however, proper for a prosecutor to argue or express his opinion that the accused is guilty, where he states, or it is apparent, as was true in this case, that such opinion is

based solely on the evidence."). A prosecutor improperly injects their personal opinion when they either (1) "convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury;" or (2) "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." (Internal quotation marks omitted.) *People v. Williams*, 2015 IL App (1st) 122745, ¶ 13. Neither of those occurred here. Accordingly, the remark did not constitute a clear or obvious error.

¶ 8        Next, Smith argues the prosecutor promoted an "us-versus-them" mentality by stating, "[H]e is still running, running from justice. Guess what? Twelve of you are the only people in this world who can stop him, who can hold him responsible for killing Kevin. I can't. The judge can't. No one else can." These remarks, Smith claims, sought to scare the jurors, telling them that everybody else was helpless to stop him and implied the judge would find him guilty but was powerless to do so. Like the prior remark, there was no contemporaneous objection to these comments. Thus, our review is for plain error.

¶ 9        A prosecutor forges an "us-versus-them" mentality by attempting to "identify and merge his position, on some irrelevant and ethereal level, with the jury, the society, and the community." *People v. Johnson*, 208 Ill. 2d 53, 79 (2003). Such argument is "inconsistent with the criminal trial principle that a jury fulfills a nonpartisan role, under the presumption that a defendant is innocent until proven guilty." *Wheeler*, 226 Ill. 2d at 129. It may "foster a situation where jurors might feel compelled to side with the State and its witnesses in order to ensure their own safety." *Id*. While prosecutors may urge the fearless administration of law, their exhortations must make it "clear to the jury that its ability to effect general and specific deterrence is dependent solely upon the jury's

careful consideration of the specific facts and issues before it." *People v. Johnson*, 2023 IL App (5th) 190428-B, ¶ 34. A prosecutor may not "blur that distinction with an extended and general denunciation of society's ills and, in effect, challenge the jury to send a message through its verdict." *Id.*

¶ 10     We do not find that these comments fostered an us-versus-them mentality. The prosecutor did not frame his exhortation to find Smith guilty based on a need to "send a message" or some other general societal concern. Rather, in the context of his entire argument, the prosecutor urged the jury to find Smith guilty based on the evidence presented in this case. We agree with the State that the prosecutor's statement that only the jury could hold Smith responsible for killing Guice was a reminder of the jury's responsibility. Indeed, in a jury trial, it is solely the jury's responsibility to determine whether the accused should be held responsible. Thus, we do not find that these comments constitute a clear or obvious error.

¶ 11     Last, Smith argues the prosecutor resorted to name calling when he referred to defense counsel arguments as "fairy tales." Smith's counsel did object when those words were uttered, so the issue was preserved. The transcript shows the following context:

> "MR. BOGDAN [prosecutor]: *** [S]he gathered the courage to come in here and confront him and tell you not to believe in fairy tales that he got out of the bar and got into a car and drove away, skipping the shooting part. Don't believe in fairy tales.
>
> She made sure --
>
> MS. SMITH: Objection.
>
> THE COURT: Overruled.

MR. BOGDAN: -- that you know this guy was five feet away from her, picked up his gun, pointed it, and fired. *** Guess what? He didn't just fire it once. That's why we heard about Kevin's second wound through the lower back.

So imagine yourself when somebody is pointing the gun at you, are you going to – counsel is like, "[W]ell, how come it's not in the front, right?' Somebody points a gun at you, you're going to be like this (indicating). Don't believe in fairy tales.

MS. SMITH: Objection.

MR. BOGDAN: When somebody points a gun at you --

THE COURT: Objection is overruled.

MR. BOGDAN: -- you're going to do this (indicating), exactly this. You're going to try to -- guess what? What did I just do? I turned my head to the right. I exposed the left side of my body. Where was Kevin shot? Here, here (indicating). Nobody stands up to a 357 Magnum like this (indicating).

Let's not -- let's look at the evidence. Let's not look at their fairy tales.

MS. SMITH: Objection.

THE COURT: Objection is overruled. Move on, State."

¶ 12     We do not find the prosecutor's usage of the words "fairy tales" was prejudicial. A prosecutor may employ harsh terms to describe a defendant's theory of the case when warranted. See, *e.g.*, *People v. Zoph*, 381 Ill. App. 3d 435, 454-55 (2008) (finding terms such as laughable, wacky, and silly were not error when used in reference to an unsubstantiated defense theory). Such rhetoric, however, must be directed at a defense theory, not the defendant or their counsel. *People v. Tijerina*, 381 Ill. App. 3d 1024, 1037 (2008). Here, the prosecutor's fairy tale remarks referred to defense counsel's theory that Smith had simply fled from the Press Box in a vehicle following

the brawl that preceded the shooting and was misidentified as the shooter amid chaotic circumstances. Within her argument, defense counsel noted that a witness described Smith as approaching Guice head on and firing at him face-to-face; yet the medical examination showed Guice had a bullet wound to his back. According to defense counsel, those circumstances indicated the witness's identification of Smith was unreliable. In context, the prosecutor's challenged remarks reveal a responsive argument: he contended that a bullet wound to Guice's back did not contradict the witness's account, as Guice may have turned his back to the shooter, and, therefore, her identification of Smith was reliable. Referring to defense counsel's argument as "fairy tales" may have been unnecessary and exaggerated, since her argument advanced a plausible inference from the evidence. But the prosecutor nevertheless directed the term toward the theory, not the defendant or his counsel. Thus, we do not find the comments improper or prejudicial.

¶ 13 Finally, we observe that even if we were to consider the prosecutor's comments improper, either individually or collectively, we would not find that Smith was prejudiced. As the supreme court noted:

> "[Smith] was identified by several eyewitnesses as the shooter, he was arrested after fleeing the scene and changing his shirt, a gun similar to the one identified as used in the shooting was found in the vehicle from which he fled, and he admitted he was in the Press Box wearing a red and white shirt the night of the shooting." *Smith*, 2025 IL 130067, ¶ 59.

Thus, it is unlikely he would have been acquitted had the prosecutor not made the challenged comments.

¶ 14 For these reasons, we affirm the judgment of the circuit court.

¶ 15 Affirmed.